Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiffs*
*WowWee Group Limited,*
*WowWee Canada, Inc. and*
*WowWee USA, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOWWEE GROUP LIMITED, WOWWEE CANADA, INC. and WOWWEE USA, INC., <br> *Plaintiffs* <br><br> v. <br><br> MEIRLY, MEMO, MENGNAN MAKER, MEN'S FASHION SHOES STORE, MILANOOPANDA, MISS MOON, MOONLIGHTLOVER, MOST TIME, NECESSARYCLOTHING, NEW FASHION PRODUCT TOY, NEWPAGE0, NICE DEAL SHOP, OCEANSTARS, OVERSEE, PACENTO OFFICAL SHOES STORE, PARDARG, PENCILCASE, PPBAO, QINGCHUNANGRAN, QINGYANGXINXIU, QINSHI, QUENTIN TIN, RELL MAIL, RFHNGMTRTNJJTED, ROMANTICSHOPPING, ROSEWHOLESALEBUYING, RUN-RABBIT, SC888999, SDFGH, SEXY WOMEN DRESS, SHENZHEN YURIY TRADING CO., LTD., SHENZHENXINSHIDAIDIANZISHANGWUDIAN, SHOPSTYLE, SMARTWEICONG, SONG789, SUMMERDANCE, SUMMERDEAL, SUNSHINE ONON, SUPERLLV, THE GIRL TO HEAVEN, THE MOST ROMANTIC THING, THEBAY, TIAN MA KE JI, | **18-cv-706 (AJN)** |

1

TIANHONGYIHUA, TOBEST2016, TOMORROWSUNSHINEE, TOPBUAUTY, TSUNEYO MACHINERY ACCESSORIES, TVG, VALUEQUALITYANDSERVICE, WANELOLIFE, WANTINGTING233, WARM COCOA COFFEE, WENSHUIXIANG, WH, WINDLYFLY, WOO CHANT, WORLD TRADING COMPANY, WORLDMAKEUP, WUMANNA, XIAOFENG001, XIAOXIANGZI418, XINGYUEXIAOBAODIAN, YANGRONGXXMM@163.COM, YANGTTE, YAYABB STORE, YIKUKUNANZHUANG, YIQIUMEI, YIWUTENGYUE, YJ STYLISH STORE, YJNFNHY, YOYO003, YUGUIHAI, YUTAO, Z_LIVING, ZDSS, ZHANGMINGHAO, ZHANGSHAOPING85, ZHANGWEM3, ZHANGYAZI, ZHANGYILIN66, ZHI JIA DAILY NECESSITIES and ZSJ,

*Defendants*

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY................................................................................... 2

III.  STATEMENT OF FACTS .................................................................................... 3

IV.   ARGUMENT ........................................................................................................ 5

   A.   Default Judgment is Appropriate as Defaulting Defendants Have Failed to Appear in this Action 5

   B.   Defendants are Properly Joined in the Same Action ........................................ 5

   C.   Plaintiffs are Entitled to a Permanent Injunction ............................................ 9

   D.   Defaulting Defendants Acted Willfully ......................................................... 13

   E.   Plaintiffs are Entitled to Heightened Statutory Damages ................................ 14

   F.   Plaintiffs are Entitled to a Post-Judgment Asset Freeze, the Transfer of Defaulting Defendants' Frozen Assets and Post-Judgment Interest on Defaulting Defendants' Frozen Assets

V.   AN INQUEST INTO AN AWARD OF DAMAGES IS UNNECESSARY IN THIS ACTION ............................................................................................................... 22

VI.  CONCLUSION................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Allee v. Medrano*, 416 U.S. 802 (1974) ................................................................................. 11

*Artemide Inc. v. Spero Elec. Corp.,* 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010). 11

*AW Licensing, LLC v. Bao*, No. 15-CV-1373, Dkt. 64 (S.D.N.Y. Aug. 2, 2016) ................. 16, 22

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2d Cir. 1995)......................................... 14

*Bulgari, S.P. A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2014 U.S. Dist.
LEXIS 107218 (N.D. Ill. July 18, 2014)................................................................................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985)......................................................... 5

*Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C.*, 697 F. Supp. 2d 287 (E.D.N.Y.
2009) ...................................................................................................................................... 23

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ............................ 5

*Cline v. 1-888-Plumbing Grp., Inc.*, 2000 U.S. Dist. LEXIS 4038 (S.D.N.Y. Mar. 30, 2000).. 7, 8

*Coach, Inc. v. Melendez*, 2011 U.S. Dist. LEXIS 116842 (S.D.N.Y. Sep. 2, 2011) ................... 14

*Dig. Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012)............................................. 7, 8, 9

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................... 10

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ........................................................... 5

*Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir.1986) ...... 16, 19

*Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) .............. 9

*Gucci Am. Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014).................................................... 20

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) ................... 14

*Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003) ............................................... 14

*Harris v. Fairweather*, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sept. 10, 2012) ................... 10

*Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) ... 12

*Jackson v. Odenat*, 2012 U.S. Dist. LEXIS 18446 (S.D.N.Y. Feb. 14, 2012) .............................. 7

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501 (S.D.N.Y.
2009) ...................................................................................................................................... 17

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ...................... 11

*Montblanc Simplo GMbH v. Colibri Corp.*, 296 F. Supp. 2d 245 (E.D.N.Y. 2010) ............. 12, 13

*MPD Accessories B.V. v. Urban Outfitters*, 2014 WL 2440683 (S.D.N.Y. May 30, 2014) ........ 12

*N.A.S. Import Corp. v. Alentino, Ltd.*, 968 F.2d 250 (2d Cir. 1992)............................................. 13

*Nike, Inc. v. Top Brand Co.*, 2006 U.S. Dist. LEXIS 76543 (S.D.N.Y. Feb. 27, 2006).............. 19

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..... 13

*Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.*,
No. 17-cv-871-KBF, Dkt. 40 (S.D.N.Y. Feb. 6, 2017).......................................................... 19

*Pearson Educ., Inc. v. Vegara*, 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010)........ 12

*Rovio Entertainment Ltd. and Rovio Animation Oy v. Angel Baby Factory d/b/a
Angelbaby_factory, et al.*, 17-cv-1840 (KPF), Dkt. No. 65 (S.D.N.Y. Sept. 13, 2017) .......... 23

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ......................................................................... 10

*Steele v. Bell*, 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ..................................... 10

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y. 2003)............................................. 13

*Tiffany (NJ) LLC v. Forbse*, 2015 US Dist. LEXIS 129647 (S.D.N.Y. Sep. 22, 2015) .............. 20

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971) .............................................. 9

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993)............................. 13

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .......................................................... 9

**Statutes**

15 U.S.C. § 1116................................................................................................................. 10, 21
15 U.S.C. § 1117............................................................................................................. 1, 14, 15
17 U.S.C. § 502................................................................................................................. 10
28 U.S.C. § 1961............................................................................................................. 17, 22
Fed. R. Civ. P. 20................................................................................................................. 7
Fed. R. Civ. P. 55................................................................................................................. 5
Fed. R. Civ. P. 64................................................................................................................. 21
N.Y.C.P.L.R. § 302............................................................................................................. 5

# GLOSSERY

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiffs or WowWee** | Plaintiff WowWee Group Limited, Plaintiff WowWee Canada, Inc. and Plaintiff WowWee USA, Inc. | N/A |
| **Defendants** | Meirly, Memo, MENGNAN MAKER, Men's fashion shoes store, milanoopanda, Miss Moon, Moonlightlover, Most time, Necessaryclothing, New Fashion Product Toy, NewPage0, Nice Deal Shop, Oceanstars, oversee, Pacento Offical Shoes Store, pardarg, pencilcase, ppbao, qingchunangran, qingyangxinxiu, qinshi, Quentin tin, Rell Mail, rfhngmtrtnjjted, Romanticshopping, Rosewholesalebuying, Run-rabbit, sc888999, sdfgh, sexy women dress, Shenzhen Yuriy Trading Co., Ltd., shenzhenxinshidaidianzishangwudian, Shopstyle, smartweicong, SONG789, summerdance, Summerdeal, sunshine onon, superllv, The girl to heaven, the most romantic thing, Thebay, TIAN MA KE JI, Tianhongyihua, tobest2016, TomorrowSunshinee, topbuauty, Tsuneyo machinery accessories, TVG, Valuequalityandservice, wanelolife, wantingting233, Warm cocoa coffee, wenshuixiang, wh, windlyfly, Woo Chant, World trading company, worldmakeup, wumanna, Xiaofeng001, xiaoxiangzi418, xingyuexiaobaodian, yangrongxxmm@163.com, yangtte, yayabb store, yikukunanzhuang, yiqiumei, yiwutengyue, YJ Stylish store, yjnfnhy, yoyo003, yuguihai, yutao, z_living, ZDSS, zhangminghao, zhangshaoping85, ZhangweM3, zhangyazi, zhangyilin66, Zhi jia daily necessities and ZSJ | N/A |
| **Defaulting Defendants** | Meirly, Men's fashion shoes store, Miss Moon, Most time, New Fashion Product Toy, NewPage0, Pacento Offical Shoes Store, pardarg, pencilcase, ppbao, rfhngmtrtnjjted, Run-rabbit, sc888999, sexy women dress, Shenzhen Yuriy Trading Co., Ltd., shenzhenxinshidaidianzishangwudian, smartweicong, SONG789, summerdance, superllv, TIAN MA KE JI, tobest2016, Tsuneyo machinery accessories, TVG, Valuequalityandservice,  Warm cocoa coffee, wenshuixiang, wh, windlyfly, Woo Chant, worldmakeup, wumanna, Xiaofeng001, xiaoxiangzi418, yangrongxxmm@163.com, yiwutengyue, YJ Stylish store, yjnfnhy, z_living, ZDSS, zhangshaoping85, zhangyazi, zhangyilin66, Zhi jia daily necessities and ZSJ | N/A |
| **Sealing Order** | Order to Seal File entered on January 26, 2018 | 7 |
| **Unsealing Order** | Order directing the Clerk of the Court to unseal the matter entered on February 5, 2018 | 3 |
| **Complaint** | Plaintiffs' Complaint filed on January 26, 2018 | 8 |

| Application | Plaintiffs' *Ex Parte* Application for: 1) a temporary restraining order; 2) an order to show cause why a preliminary injunction should not issue; 3) an asset restraining order; 4) an order authorizing alternative service by electronic mail and 5) an order authorizing expedited discovery against Defendants | 13-23 |
|---|---|---|
| Arnaiz Dec. | Declaration of Jessica Arnaiz in Support of Plaintiffs' Application | 21 |
| Wolgang Dec. | Declaration of Spencer Wolgang in Support of Plaintiffs' Application | 23 |
| Yanofsky Dec. | Declaration of Richard Yanofsky in Support of Plaintiffs' Application | 22 |
| TRO | 1) Temporary Restraining Order; 2) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 3) Asset Restraining Order; 4) Order Authorizing Alternative Service by Electronic Means and 5) Order Authorizing Expedited Discovery entered on January 9, 2018 | 11 |
| Amended Sealed Order | Order entered on January 29, 2018 in response to Plaintiffs' request for clarification of the TRO | 10 |
| OSC Hearing | The Court held an Order to Show Cause Hearing on February 8, 2018 at which Plaintiffs appeared, however, no Defendants appeared | N/A |
| PI Order | February 8, 2018 Order converting the TRO to a Preliminary Injunction | 27 |
| Scheduling Order | Order entered on May 11, 2018 instructing Plaintiffs to file any motions for default judgment by April 30, 2018 | 45 |
| Order Extending Plaintiffs' Time to File | Order entered on May 14, 2018 extending Plaintiffs' time to file any motions for default judgment until June 29, 2018 | 47 |
| Motion for Default Judgment | Plaintiffs' Motion for Default Judgment and a Permanent Injunction against Defendants dated June 28, 2018 | *TBD* |
| Brennan Dec. | Declaration by Mary Kate Brennan in Support of Plaintiffs' Motion for Default Judgment dated June 28, 2018 | *TBD* |

## I.  **INTRODUCTION**[1]

Pursuant to the Scheduling Order and Order Extending Plaintiffs' Time to File, and in accordance with Your Honor's Individual Rules of Practice, the Court's Individual Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2), Plaintiffs respectfully submit this memorandum of law in support of their Motion for Default Judgment against Defaulting Defendants.  For the reasons set forth below, Plaintiffs respectfully request the following relief against Defaulting Defendants: 1) the entry of a final judgment and permanent injunction by default in order to prevent Defaulting Defendants from infringing Plaintiffs' intellectual property rights in the future; 2) individual statutory damages awards pursuant to 15 U.S.C. § 1117(c), plus post-judgment interest calculated pursuant to the statutory rate, as follows:

a. an award of $50,000.00 in statutory damages against the following 14 Defaulting Defendants: Most time, New Fashion Product Toy, Pacento Offical Shoes Store, rfhngmtrtnjjted, superllv, TIAN MA KE JI, TVG, Warm cocoa coffee, windlyfly, Woo Chant, wumanna, Xiaofeng001, yangrongxxmm@163.com and yjnfnhy;

b. an award of $75,000.00 in statutory damages against the following 7 Defaulting Defendants: ppbao, sc888999, Shenzhen Yuriy Trading Co., Ltd., shenzhenxinshidaidianzishangwudian, zhangyilin66, ZSJ and tobest2016;

c. an award of $150,000.00 in statutory damages against the following 16 Defaulting Defendants:  Miss Moon, NewPage0, pencilcase, Run-rabbit, sexy women dress, SONG789, summerdance, Tsuneyo machinery accessories,

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Complaint or Application.

Valuequalityandservice, worldmakeup, xiaoxiangzi418, YJ Stylish store, z_living, ZDSS, zhangshaoping85 and zhangyazi;

d. an award of $300,000.00 in statutory damages against the following 6 Defaulting Defendants: meirly, pardarg, smartweicong, wenshuixiang, yiwutengyue and Zhi jia daily necessities; and

e. an award of $750,000.00 in statutory damages against the following 2 Defaulting Defendants: Men's fashion shoes store and wh.

3) a post-judgment asset restraining order and 4) an order authorizing the release and transfer of Defaulting Defendants' Frozen Assets (as defined *infra*) to satisfy the damages awarded to Plaintiffs.[2]

## II. PROCEDURAL HISTORY

Plaintiffs filed their Application, including the Complaint, on January 26, 2018. *See* Brennan Dec., ¶ 9. On the same day, January 26, 2018, the Court entered the TRO, which specifically authorized service by electronic means. *See id*., ¶¶ 11, 13. Plaintiffs successfully served all Defendants, including Defaulting Defendants, pursuant to the TRO. *See id*., ¶ 18, Ex. C. On January 16, 2018, the Court held a Show Cause Hearing, at which no Defendants appeared. *See id*., ¶ 19. Subsequently, on February 8, 2018, the Court entered a PI Order against all Defendants that mirrored the terms of the TRO and which extended through the pendency of the Action. *See id*., ¶ 20, Ex. D.

Pursuant to the Scheduling Order entered by the Court on May 11, 2018, Plaintiffs were directed to file any motion for default judgment by June 1, 2018. *See id*., ¶ 23. On May 14, 2018,

---

[2] Through their Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiffs only seek damages for their First and Second Causes of Action (Trademark Counterfeiting and Infringement), however, do not waive their Fourth Cause of Action (Copyright Infringement). Plaintiffs do not seek monetary relief in connection with the remaining causes of action plead in the Complaint.

Plaintiffs submitted a request for an extension of time to file any motion for default judgment, which the Court granted. *See id*., ¶ 24. Subsequently, on May 15, 2018, Plaintiffs filed a Request for Entry of Default, and the Clerk of the Court entered a Certificate of Default as to those listed Defendants in Plaintiffs' Request for Entry of Default, including Defaulting Defendants, on May 18, 2018.[3] *See id*., ¶¶ 25, 26, Ex. E. Accordingly, Plaintiffs respectfully submit the instant Motion for Default Judgment.

### III. STATEMENT OF FACTS

WowWee is a leading designer, developer, marketer and distributor of innovative robotic toys and consumer entertainment products. *See* Yanofsky Dec., ¶ 4. One of WowWee's most popular and successful products are its interactive, hand-held robotic toys that react to sound, motion and touch and are designed to look like various animals and/or other characters, for example, monkeys, unicorns and sloths ("Fingerlings Product(s)"). *See id*, ¶ 5. While Plaintiffs have gained significant common law trademark and other rights in their Fingerlings Products through use, advertising and promotion, Plaintiffs also protected their valuable rights by filing for and obtaining federal trademark registrations. *See id*., ¶ 10-11, Ex. C. Plaintiffs also own both registered and unregistered copyrights related to the Fingerlings Products. *See id*. ¶ 9, Ex. B.

Defendants, including Defaulting Defendants, are individuals and/or businesses located in China who conduct business in the U.S., including within this judicial district, through their User

---

[3] On June 13, 2018, the Court held an initial pretrial conference. *See* Dkts. 45 and 50. Plaintiff and counsel for the following 30 non-defaulting Defendants appeared: Fleetingtime, tznnn@163.com, 7Eleven, Ding Ding More, 7season, Forevershoppng, Dog wang, 7ladybeauty, Beeasylife, Dannieok, Letsmi, car supply168, Izara, Jingpinchuangshangyongpin, Dimondcenter, Lailove2017@163.com, Explorers, Liangzixian, Cosyhome, Libertyangel, Fengsuxiaodian, Aimayiku, Huae, Carnation, Elove, 5miles, Akulaki, City Baby Clothing Store, Libohai and Dancerjim. *See* June 13, 2018 Minute Entry. Shenzhen Sailvan Network Technology Ltd. owns all 30 of these non-defaulting Defendants who, correspondingly, are represented by the same counsel. On June 13, 2018, Plaintiffs confirmed that they would file their Motion for Default Judgment against all Defaulting Defendants remaining in the Action no later than June 29, 2018.

Accounts and on their Merchant Storefronts on Wish. *See* Brennan Dec., ¶ 6. Through their Merchant Storefronts, without Plaintiffs' authorization or consent, Defaulting Defendants were manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing and/or using the Fingerlings Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Fingerlings Marks and/or displaying and/or incorporating the Fingerlings Works and/or works that are substantially similar to, identical to and constitute infringement of the Fingerlings Works (hereinafter collectively referred to as "Counterfeit Products" or "Infringing Products"). *See id.*, ¶ 8.

Based on the discovery produced by ContextLogic, Defaulting Defendants collectively sold a total of 56,777 Counterfeit Products on Wish alone.[4] *See id.*, ¶ 38, Ex. G. In Plaintiffs' counsel's experience, however, it is usual and customary for counterfeiters, such as Defaulting Defendants, to sell across multiple e-commerce platforms. *See id.*, ¶ 32. To sign up as a seller on Wish, a seller first must provide information regarding other online e-commerce platforms it utilizes in addition to Wish, such as AliExpress, Amazon and/or eBay. *See id.*, ¶ 33, Ex. F. Thus, it is likely that Defaulting Defendants are utilizing other e-commerce platforms to circumvent the TRO and PI Order to continue to engage in counterfeiting and infringing activities, specifically the sale and/or offering for sale of Counterfeit Products. *See id.*, ¶ 33. Consequently, it is extremely likely that the number of sales of Counterfeit Products made by Defaulting Defendants greatly exceeds the numbers identified in ContextLogic's discovery responses. *See id.*, ¶ 35.

---

[4] The individual breakdown of sales figures of Counterfeit Products for each and every Defaulting Defendant, as identified in ContextLogic's discovery responses, is attached to the Brennan Dec. as Exhibit G.

# IV.   ARGUMENT

## A. DEFAULT JUDGMENT IS APPROPRIATE AS DEFAULTING DEFENDANTS HAVE FAILED TO APPEAR IN THIS ACTION

Fed. R. Civ. P. 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Fed. R. Civ. P. 55(a).  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). Ultimately, the entry of a default judgment is entrusted to the sound discretion of the district court. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  Moreover, as the Court acknowledged in its entry of the TRO and PI Order, it has personal jurisdiction over Defaulting Defendants pursuant to § 302(a)(1) of the N.Y. C.P.L.R. as this suit arises from Defendants' business dealings and transactions with consumers in New York and the assertion of personal jurisdiction comports with the Due Process Clause of the Constitution.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985).  Therefore, Plaintiffs respectfully submit that the Court should grant their Motion for Default Judgment since Defaulting Defendants failed to Answer or otherwise appear in this Action and Plaintiffs' requests for damages are reasonable and supported by evidence.  *See* Brennan., ¶¶ 26, 37-38.

## B. DEFENDANTS ARE PROPERLY JOINED IN THE SAME ACTION

Plaintiffs respectfully submit that Defendants are properly joined in this Action.  Here, Defendants are all China-based sellers that offered for sale and/or sold the same Counterfeit Products violating the same intellectual property rights of Plaintiffs into this District on the same e-commerce platform, Wish, thereby knowingly and intentionally causing irreparable harm to Plaintiffs.  *See* Ex. D to the Complaint, Arnaiz Dec, ¶ 6, Ex. A and Yanofsky Dec., ¶ 28; *see also* Ex. G to Brennan Dec.  Generally, third-party merchants on Wish and other online marketplace

platforms, like Defendants, use aliases, false addresses and other incomplete identification information to avoid detection. *See* Wolgang Dec., ¶¶ 13-15. Consequently, during the investigative stage of Plaintiffs' anticounterfeiting efforts, Plaintiffs were unable to ascertain ownership details about third-party merchants because Wish does not require sellers to display their registered business names or trade names, contact names, complete addresses or any other contact information.[5] *See id*., ¶ 14. To protect Plaintiffs' valuable intellectual property rights, Plaintiffs sought and obtained injunctive relief against 83 Defendants. Plaintiffs respectfully submit that they properly filed this Action against Defendants because otherwise (*i.e.* if Plaintiffs filed individual lawsuits against the third-party merchants violating Plaintiffs' Fingerlings Marks and/or Fingerlings Works), those illicit counterfeiters would most certainly become aware of the lawsuits regarding sales of Counterfeit Products on Wish.[6] Once the China-based counterfeiters become aware of any legal actions, these unscrupulous individuals and entities – that have both the incentive and capability to hide or destroy relevant business records and transfer and hide their ill-gotten funds – will transfer, conceal and/or destroy the inventory of the Counterfeit Products in their possession and their means of making or obtaining such Counterfeit Products, along with all business records and any and all other evidence relating to their counterfeiting activities, as well as hide or dispose of all of all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") to which Plaintiff may be

---

[5] As discussed at the Initial Pretrial Conference held on June 13, 2018, only through certain Defendants' expedited discovery responses as required by the TRO and PI Order, provided only after these Defendants retained counsel, did Plaintiff learn that certain Defendants share a common owner. For example, all 30 non-defaulting Defendants are owned by Shenzhen Sailvan Network Technology Ltd. *See* fn. 3. Moreover, although Wish requires its sellers to first provide information regarding other online e-commerce platforms it utilizes in addition to Wish, such as AliExpress, Amazon and/or eBay, that information is not available on Wish. *See* Brennan Dec., ¶ 33, Ex. F.

[6] China-based counterfeiters, such as Defendants, are in constant communication. *See* Brennan Dec., ¶ 29.

entitled. *See id.* Accordingly, to not file this Action jointly would be an exercise in futility and inefficient use of judicial resources.

Pursuant to Fed. R. Civ. P. 20(a), Defendants may permissively be joined in a lawsuit. "There are two prerequisites to permissive joinder. First, a right to relief must be asserted against each defendant relating to or arising out of the same transaction or occurrence. Second, there must exist some question of law or fact common to all the parties that will arise in the litigation." *Cline v. 1-888-Plumbing Grp., Inc.*, 99 Civ. 1401 (RJW), 2000 U.S. Dist. LEXIS 4038, at *3 (S.D.N.Y. Mar. 30, 2000); *see also Dig. Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 243 (S.D.N.Y. 2012). This Court has held that "[t]his is not an exacting standard." *Jackson v. Odenat*, 2012 U.S. Dist. LEXIS 18446, at *6 (S.D.N.Y. Feb. 14, 2012). [7]

First, Plaintiffs respectfully submit that they satisfied the first prong of the Rule 20(a) analysis because they have established a logical relationship between Defendants, suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence or series of transactions or occurrences. [8] Here, all Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operations. *See* Wolgang Dec, ¶¶ 13-15. They directly target unlawful business

---

[7] While Plaintiffs acknowledge that in the context of BitTorrent cases brought under the Copyright Act, joinder has been denied in this District in some litigations, those cases are factually distinguishable and contrary to the general rule favoring joinder. Moreover, this Action involves not only the Copyright Act but the Lanham Act and each Defendant here engaged in an identical process of targeting its sales of the same Counterfeit Products to consumers in this District via the same e-commerce platform, Wish. The facts giving rise to Defendants' individual liabilities are identical because their violations of intellectual property rights and distribution schemes into the U.S. are the same. In other words, unlike with the BitTorrent cases brought under the Copyright Act, there are no plausible contradictory defenses that any Defendant could raise in this Action.

[8] *See Bulgari, S.P. A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14-cv-4819, 2014 U.S. Dist. LEXIS 107218, at *2 (N.D. Ill. July 18, 2014) (In this case, the Court granted the plaintiff injunctive relief against a host of counterfeiters selling infringing products online, finding that the defendants' online stores "share unique identifiers, such as website design and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.").

7

activities toward consumers in New York, cause harm to Plaintiffs' business within this Judicial District and have caused and will continue to cause irreparable injury to Plaintiffs. *See* Arnaiz Dec, ¶¶ 6-9 and Yanofsky Dec., ¶ 28. Although Defendants operate under multiple fictitious names, many similarities between the Defendants' Merchant Storefronts on the same e-commerce platform, Wish, along with their near identical Counterfeit Products, indicate a coordinated effort. *See* Arnaiz Dec, ¶¶ 6, Ex. A. Moreover, Defendants' liabilities for their counterfeiting activities are the same because they violated Plaintiffs' same intellectual property rights by selling similar, if not identical, Counterfeit Products on Wish. *See Cline*, 2000 U.S. Dist. LEXIS 4038, at *3-4 (holding that the plaintiff satisfied the first prong of the joinder analysis because the defendants "allegedly engaged in acts identical to those which form the basis of plaintiff's claim . . . namely the use of plaintiff's mark, 1-800-PLUMBING.").

Second, the common questions of law and fact in this Action involve the governing laws – the Lanham Act and Copyright Act – prohibiting each Defendant from engaging in the unlawful pattern of conduct violating Plaintiffs' intellectual property rights through the sale of nearly identical Counterfeit Products via Wish.[9] *See id.* at *4 (holding that the plaintiff satisfied the second prong of the joinder analysis because the "same questions of law and fact will apply to defendants" regarding the plaintiff's trademark claims).

Most significantly, since Defaulting Defendants have failed to appear and raise any issue regarding joinder, the Court need not now consider severing the actions as to each Defendant. By the very nature of their inaction, Defaulting Defendants have failed to raise any defenses, let alone conflicting ones, that would require separate factual and legal analysis. *See generally Dig. Sin, Inc.*, 279 F.R.D. at 244. (The Court declined to sever the lawsuit, however, held that if "defendants

---

[9] *See supra* fn. 2.

come forward to defend themselves against the allegations in the Complaint – potentially raising differing, conflicting defenses – the Court will remain open to any arguments against joinder of the parties that those defendants wish to make at that time.").

Finally, Plaintiffs respectfully submit that joinder of Defendants in this Action is proper as it facilitates judicial economy by a single trial rather than 83 separate actions brought before different judges in this Court. Ultimately, it is within the broad discretion of the Court to permit joinder. As this Court has held:

> Under the Federal Rules of Civil Procedure, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.' *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966); 'The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.' 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1652 (3d ed. 2011.

*Id*. at 243.

### C. PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

Plaintiffs respectfully request that the Court permanently enjoin Defaulting Defendants from any further counterfeiting and/or infringement of Plaintiffs' Fingerlings Marks and Fingerlings Works for the reasons detailed below, coupled with the Court's earlier findings on the same issues in its entrance of the TRO and PI Order. By virtue of Defaulting Defendants default, Plaintiffs' well-pleaded factual allegations set forth in the Complaint, except those relating to the amount of damages, are taken as true. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971); *see also Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir. 1992) *cert. denied*, 113 S.Ct. 1049 (1993).

A district court has authority under both the Lanham Act and the Copyright Act to grant injunctive relief to prevent further violations of a plaintiff's trademarks and copyrights. *See* 15

U.S.C. § 1116, 17 U.S.C. § 502. Furthermore, a district court has the authority to grant a permanent injunction on a motion for default judgment. *See Harris v. Fairweather*, 11-cv-2152 (PKC) (AJP), 2012 U.S. Dist. LEXIS 128409, 38-39 (S.D.N.Y. Sep. 10, 2012). Here, since Defaulting Defendants' defaults constitute admissions of liability and Plaintiffs successfully established their claims for trademark infringement and counterfeiting and copyright infringement, Plaintiffs respectfully submit that a permanent injunction against Defaulting Defendants should be entered.[10] *See also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

Specifically, a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc*, 547 U.S. at 391; *see also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (extending the *eBay* standard to copyright injunctions). In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations." *Steele v. Bell*, 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014). Here, as plead in the Complaint and supported by the uncontroverted evidence, Defaulting Defendants infringed Plaintiffs' Fingerlings Marks and one or more of the Fingerlings Works by, *inter alia*, willfully and knowingly advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products, thereby causing irreparable injury to Plaintiffs. *See* Ex. D to the Complaint and Ex. G to the Brennan Dec. While ContextLogic's compliance with the TRO and

---

[10]As detailed at length in the Application and omitted here for brevity, Plaintiffs demonstrated success on their uncontroverted claims for trademark counterfeiting and infringement as well as copyright infringement against Defaulting Defendants. *See* Application; *see also* TRO and PI Order.

PI Order– insofar as ContextLogic has frozen the identified User Accounts and Merchant Storefronts owned by Defaulting Defendants – has prevented further sales of Counterfeit Products on Wish during the pendency of this Action, there remains a serious possibility that Defaulting Defendants will continue to infringe Plaintiffs' intellectual property rights should such restraints be lifted. *See Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways." (quotation marks omitted)).

While irreparable harm is no longer presumed, this Circuit's district courts have issued permanent injunctions when the holders of intellectual property rights have shown potential losses of goodwill and control over their trade dress and/or trademark(s). *See*, *e.g.*, *Artemide Inc. v. Spero Elec. Corp.,* 09-cv-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010) (finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation were shown). Here, not only have Plaintiffs suffered lost profits as a result of Defaulting Defendants' competing, substandard Counterfeit Products but Defaulting Defendants' actions also have caused irreparable harm to Plaintiffs' goodwill and reputation as well as to the goodwill and reputation associated with their Fingerlings Marks, Fingerlings Works and Fingerlings Products. *See* Yanofsky Dec., ¶ 28. Further, because of Defaulting Defendants' failures to appear in this Action, Plaintiffs are unable to obtain complete and accurate information regarding actual profits derived from Defaulting Defendants' sales of Counterfeit Products, making Plaintiffs' actual damages effectively impossible to measure. *See Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) (finding irreparable harm where "determining the amount

of damages from [defendant's] infringing conduct [is] especially difficult, if not impossible"); *see also* Brennan Dec., ¶ 35.

Given such injury to Plaintiffs' goodwill and reputation, as well as the absence in the record of any assurance against Defaulting Defendants continued violations of Plaintiffs' Fingerlings Marks and Fingerlings Works, monetary damages alone are inadequate to compensate Plaintiffs for the damage they have incurred and will continue to incur if a permanent injunction is not entered. A showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights. *Montblanc Simplo GMbH v. Colibri Corp.*, 296 F. Supp. 2d 245, 259 (E.D.N.Y. 2010); *see also MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 LTS KNF, 2014 WL 2440683, at *10 (S.D.N.Y. May 30, 2014). When a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to, or may continue its infringement." *Pearson Educ., Inc. v. Vegara,* 2010 U.S. Dist. LEXIS 101597, at *4 (S.D.N.Y. Sept. 27, 2010) (internal citations omitted), adopted by, Order at Dkt. No 21 (S.D.N.Y. May 11, 2011). As discussed above, as well as in the Application, Defaulting Defendants' failure to participate in this Action supports the conclusion that Defaulting Defendants do not have any intention of ceasing their infringement and counterfeiting of Plaintiffs' Fingerlings Marks and Fingerlings Works in the future. Since Plaintiffs have shown a threat of future infringement and Plaintiffs cannot be compensated properly with monetary relief alone, Plaintiffs respectfully submit that their requested injunction is necessary to fully redress the irreparable injury that they have suffered due to Defaulting Defendants' illegal and infringing actions. *See Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiffs, since they have suffered, and will continue to suffer, irreparable harm to their business, profits, goodwill and reputation as a result of Defaulting Defendants' willful and knowing sales of substandard imitations of the Fingerlings Products. *See* Yanofsky Dec., ¶ 28. In contrast, any harm to Defaulting Defendants would only be the loss of their ability to continue to offer Counterfeit Products for sale. Additionally, the public interest is clearly served by a permanent injunction, as "[t]he public has an interest in not being deceived." *NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 244 (S.D.N.Y. 2010) (granting a motion to enjoin defendant from any further violations of trademark); *see also Montblanc*, 692 F. Supp. 2d at 259 (E.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of Plaintiffs' Fingerlings Products bearing Plaintiffs' Fingerlings Marks and featuring and/or incorporating Plaintiffs' Fingerlings Works particularly since the Fingerlings Products are intended for young children, and poor-quality Counterfeit Products can cause pose significant health and safety risks to such a vulnerable audience.

### D. DEFAULTING DEFENDANTS ACTED WILLFULLY

The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See N.A.S. Import Corp. v. Alentino, Ltd.*, 968 F.2d 250, 252 (2d Cir. 1992).

Foremost, infringement is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Although additional analysis is not necessary due to Defaulting Defendants' failure to appear in this Action, their willfulness is apparent for the

following reasons. First, the Counterfeit Products contain marks and/or artwork that are identical to one or more of Plaintiffs' Fingerlings Marks and Fingerlings Works. *See* Ex. D to the Complaint and Ex. G to the Brennan Dec.; *see also Coach, Inc. v. Melendez*, 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842, at 5 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional."). Second, the undisputed evidence shows that none of the Counterfeit Products sold by Defaulting Defendants were purchased from Plaintiffs. *See* Yanofsky Dec., ¶ 24; *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (defendants found to have acted willfully due in part to their failure to take any measures to verify the authenticity of the infringing product); *Gucci Am., Inc., v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. April 23, 2004) (quoting *Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228, 245 (3d Cir. 2003) ("'Selling products acquired outside the customary chain of retail distribution and without the usual authenticating documentation' is a 'high risk business.'").

## E. PLAINTIFFS ARE ENTITLED TO HEIGHTENED STATUTORY DAMAGES

Both the Lanham Act and the Copyright Act allow a plaintiff to elect either statutory damages or actual damages for willful infringement. *See* 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c). The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for

14

sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Whereas, Section 504(c) of the Copyright Act allows a copyright owner to elect statutory damages in the amount of "not less than $750 or more than $30,000 as the court considers just" with respect to any one work. Alternatively, where a court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." *See* 17 U.S.C. § 504(c)(l)-(2).

Here, without waiving their claims under the Copyright Act, Plaintiffs respectfully elect to seek statutory damages solely under the Lanham Act. Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits in such cases is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." *See Gucci Am., Inc.*, 315 F Supp 2d at 520; *see also Coach, Inc.*, 2014 U.S. Dist. LEXIS 79005, at *41-42 ("Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records."). Given Defaulting Defendants' propensities to conceal their identities, disappear and destroy or hide any evidence or records of their counterfeiting and infringing actions, and that to date, no Defaulting Defendants have appeared, answered or otherwise responded to the Complaint, Plaintiffs cannot ascertain Defaulting Defendants' actual profits. *See* Brennan Dec., ¶ 36. Simply put, this case presents the exact circumstances that Congress envisioned in its enactment of Section 1117(c).

In determining statutory damages awards under Section 1117(c) of the Lanham Act, courts have adopted the following factors used for determining statutory damages under Section 504(c) of the Copyright Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright [or trademark]; (4) the deterrent effect on others besides

the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci Am., Inc.*, 315 F. Supp. 2d at 511 (quoting *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)); *see also Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.").

With respect to the first, second and sixth factors, Defaulting Defendants' propensities to secrete evidence pertaining to sales and profits – along with their failure to appear, answer or otherwise respond to the Complaint or comply with the expedited discovery ordered in the TRO and PI Order – have made it impossible to determine Defaulting Defendants' profits, quantify any expenses that Defaulting Defendants may have saved by infringing Plaintiffs' Fingerlings Marks, or assess any revenues lost by Plaintiffs as a result of Defaulting Defendants' infringing and counterfeiting activities. *See* Brennan Dec., ¶¶ 31-36. Thus, these three factors support generally higher statutory damages award for Plaintiffs. *See AW Licensing, LLC v. Bao*, No. 15-CV-1373, Dkt. 64 (S.D.N.Y. Aug. 2, 2016) (unpublished) ("[C]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range," like Defaulting Defendants' User Accounts and Merchant Storefronts in this Action).

Here, Plaintiffs also established that their Fingerlings Products have achieved worldwide recognition and success as a result of Plaintiffs' efforts in building up and developing consumer

recognition, awareness and goodwill in their Fingerlings Products. *See* Yanofsky Dec., ¶ 5. By virtue of the foregoing, Plaintiffs amassed enormous value in their Fingerlings Marks, and the Fingerlings Marks identify Plaintiffs as the exclusive source of the Fingerlings Products to which they are applied. *See id.*, ¶ 17. Therefore, the third factor – the value of Plaintiffs' Fingerlings Marks – also weighs in favor of increased statutory damages awards for Plaintiffs against Defaulting Defendants. The remaining factors further support significant statutory damages awards against Defaulting Defendants. Particularly where, like here, Defaulting Defendants acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009).

In light of Defaulting Defendants' knowing and intentional offering for sale and/or sale of Counterfeit Products bearing trademarks that are identical or confusingly similar to Plaintiffs' Fingerlings Marks, Plaintiffs seek statutory damages awards against each and every Defaulting Defendant.[11] Since Defaulting Defendants have defaulted, and therefore have not provided any evidence of their purchases or sales of Counterfeit Products, the amount of Defaulting Defendants' profits is unknown. *See* Brennan Dec., ¶ 36. Therefore, Plaintiffs are deprived of the ability to prove a specific amount of actual damages and instead have been left with no choice but to seek an award of statutory damages. Plaintiffs' respectful requests for statutory damages are based upon a combined analysis of the following: 1) the discovery provided by ContextLogic which shows the number of sales of Counterfeit Products made by each Defaulting Defendant on Wish and 2)

---

[11] Plaintiffs respectfully submit that they are entitled to post-judgment interest calculated pursuant to the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

each Defaulting Defendants' wrongful use of the Fingerlings Marks and Fingerlings Works. *See id.*, ¶ 38, Ex. G.

Given that the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" (15 U.S.C. § 1117(c)), Plaintiffs respectfully seek statutory damages awards as follows:

a. an award of $50,000.00 in statutory damages against the following 14 Defaulting Defendants: Most time, New Fashion Product Toy, Pacento Offical Shoes Store, rfhngmtrtnjjted, superllv, TIAN MA KE JI, TVG, Warm cocoa coffee, windlyfly, Woo Chant, wumanna, Xiaofeng001, yangrongxxmm@163.com and yjnfnhy;

b. an award of $75,000.00 in statutory damages against the following 7 Defaulting Defendants: ppbao, sc888999, Shenzhen Yuriy Trading Co., Ltd., shenzhenxinshidaidianzishangwudian, zhangyilin66, ZSJ and tobest2016;

c. an award of $150,000.00 in statutory damages against the following 16 Defaulting Defendants: Miss Moon, NewPage0, pencilcase, Run-rabbit, sexy women dress, SONG789, summerdance, Tsuneyo machinery accessories, Valuequalityandservice, worldmakeup, xiaoxiangzi418, YJ Stylish store, z_living, ZDSS, zhangshaoping85 and zhangyazi;

d. an award of $300,000.00 in statutory damages against the following 6 Defaulting Defendants: meirly, pardarg, smartweicong, wenshuixiang, yiwutengyue and Zhi jia daily necessities; and

e. an award of $750,000.00 in statutory damages against the following 2 Defaulting Defendants: Men's fashion shoes store and wh.

*See* Ex. G to Brennan Dec. Generally, "[t]he lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly appropriate for this case." *Nike, Inc. v. Top Brand Co*., 2006 U.S. Dist. LEXIS 76543, at *6 (S.D.N.Y. Feb. 27, 2006). Specifically, Plaintiffs respectfully submit that their tiered requests for statutory damages based upon the currently known numbers of sales of Counterfeit Products by Defaulting Defendants are appropriate. Plaintiffs reiterate that the number of sales of Counterfeit Products made by Defaulting Defendants as identified in ContextLogic's discovery responses are the lowest possible number of sales. In other words, it is likely that Defaulting Defendants' sales of Counterfeit Products are significantly higher than what has been identified through the limited discovery Plaintiffs were able to obtain. *See* Brennan Dec., ¶ 35. Furthermore, Plaintiffs confirmed that each and every Defaulting Defendant wrongfully used at least one of the Fingerlings Marks. *See* Ex. G to Brennan Dec. Since "the amount of defendants' likely profits from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider," Plaintiffs respectfully submit that Defaulting Defendants' willful violations of the Lanham Act make their requests for damages appropriate. *Nike, Inc*., 2006 U.S. Dist. LEXIS 76543 at *6. "Moreover, this Court has 'wide discretion' in 'setting the amount of statutory damages.'" *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al*., No. 17-cv-871-KBF, Dkt. 40 (S.D.N.Y. Feb. 6, 2017) citing *Fitzgerald Publ'g Co.*, 807 F.2d at 1116.

### F. PLAINTIFFS ARE ENTITLED TO A POST-JUDGMENT ASSET FREEZE, THE TRANSFER OF DEFAULTING DEFENDANTS' FROZEN ASSETS AND POST-JUDGMENT INTEREST ON DEFAULTING DEFENDANTS' FROZEN ASSETS

The post-judgment continuance of the pre-judgment asset restraint previously imposed on Defaulting Defendants by this Court in the TRO and extended in the PI Order is appropriate

pursuant to the law of this Circuit and as a matter of equity.  Moreover, it is necessary to preserve Plaintiffs' rights to the relief sought in the Complaint (*i.e.,* an equitable accounting).  As this Court acknowledged, the Second Circuit expressly affirmed the Court's authority to freeze counterfeiters' assets "in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases" – whether such assets are located in the United States or abroad, and "impos[ed] on a defendant the obligation to disclose and return profits." *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014).

Moreover, this Court has repeatedly granted post-judgment asset restraints to aid in the enforcement of a judgment, ensure the availability of relief under the Lanham Act or otherwise and prevent defendants who have defaulted in similar cases from disposing of their assets upon entry of final judgment pursuant to 1) its inherent equitable powers and 2) Section 5222 of the CPLR, as incorporated by Fed. R. Civ. P. 69, particularly where, as here, Defaulting Defendants' complete failure to participate in the Action or comply with discovery made any calculation on Plaintiffs' claim for an accounting impossible.  *See Tiffany (NJ) LLC v. Forbse*, 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015).

Most recently, in *Forbse*, the Court ordered a post-judgment asset restraint against the defendants who engaged in counterfeiting activities in reliance on both the Court's equitable powers and state law, notwithstanding the Court's award of statutory damages, concluding that, "[t]he asset restraint should remain in place in order to prevent the very harm initially contemplated by the preliminary injunction, just as, analogously, a prejudgment attachment, issued pursuant to New York law and Rule 64 against a defendant seeking to evade enforcement of a possible judgment by secreting property, continues (absent vacatur, modification, or discharge) after the entry of judgment." US Dist. LEXIS 129647, at *10-11 (internal citations omitted).  Similarly,

since Plaintiffs have demonstrated that Defaulting Defendants are foreign individuals or entities that have engaged in counterfeiting and infringing activities and failed to answer or otherwise formally appear in this Action, or comply with the expedited discovery ordered in the TRO and PI Order, and are highly likely to dispose of, transfer and/or hide their ill-gotten Defendants' Frozen Assets, there remains a significant risk that Defaulting Defendants will dispose of, transfer and/or hide all assets to which Plaintiffs may be entitled if Defaulting Defendants' Frozen Assets do not remain frozen post-judgment. *See* Brennan Dec., ¶ 34. This risk is not lessened by entry of judgment, but likely elevated. *See Forbse*, US Dist. LEXIS 129647, at \*10 ("[T]he need for the injunction is clear: without this relief, defendants would have available a fourteen-day window in which to hide their assets" and "[t]he risk that they might do so, which in part justified the preliminary injunction, is not lessened by entry of judgment."). Accordingly, Plaintiffs respectfully request that the post-judgement asset restraint be entered immediately and continue, at a minimum, until Plaintiffs may enforce and satisfy the final judgments entered by this Court against Defaulting Defendants.

Additionally, in accordance with Fed. R. Civ. P. 64, 15 U.S.C. § 1116(a) and this Court's inherent equitable powers to issue remedies ancillary to its authority to provide final relief, Plaintiffs respectfully request that the Court order that any money, securities or other property or assets of Defaulting Defendants (whether said assets are located in the U.S. or abroad) from any accounts associated with or utilized by any Defaulting Defendant, Defaulting Defendant's User Account(s) and/or Defaulting Defendants' Merchant Storefront(s) (whether said account is located in the U.S. or abroad) ("Defaulting Defendants' Assets") from any accounts associated with or utilized by any Defaulting Defendant, any Defaulting Defendants' User Account(s) and/or any Defaulting Defendant's Merchant Storefront(s) (whether said account is located in the U.S. or

abroad) ("Defaulting Defendants' Financial Accounts") that were and/or are attached and frozen or restrained pursuant to the TRO and PI Order, or any future order entered by the Court in this Action, including, but not limited to, those Defaulting Defendants' accounts attached and frozen or restrained by PayPal Inc., ContextLogic, Payoneer Inc., the payment services offered by the Alibaba Group d/b/a Alibaba.com and Aliexpress.com (*e.g.*, Alipay.com Co., Ltd., Ant Financial Services Group) ("AliPay") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defaulting Defendants be transferred to Plaintiffs as partial or complete satisfaction of the damages awarded to Plaintiffs by the Court. In similar actions involving counterfeiting defendants, this Court has regularly ordered that all monies or assets in any accounts associated with or utilized by the defendants, both previously restrained and newly discovered, be released and transferred to the plaintiff in satisfaction of the damages awarded in the case until the plaintiff has recovered the full amount owed. *See*, *e.g.*, *AW Licensing, LLC*, 2016 US Dist. LEXIS 101150, at *19-20. Further and pursuant to 28 U.S.C. § 1961(a), Plaintiffs respectfully request that until such time as Plaintiffs have fully recovered the entire judgment from each Defaulting Defendant, this Court order that post-judgment interest accrue against any remaining balance after the Defaulting Defendants' Frozen Assets are transferred to Plaintiffs as part of this judgment.

## V.     AN INQUEST INTO AN AWARD OF DAMAGES IS UNNECESSARY IN THIS ACTION

Plaintiffs' requests for awards of statutory damages do not require the Court to conduct an evidentiary hearing. Courts have awarded damages post-default without an evidentiary hearing based upon affidavits submitted by the plaintiff. *See Rovio Entertainment Ltd. and Rovio Animation Oy v. Angel Baby Factory d/b/a Angelbaby_factory, et al.*, 17-cv-1840 (KPF), Dkt. No.

65 (S.D.N.Y. Sept. 13, 2017); *see also Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C.*, 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009).

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment and a Permanent Injunction in its entirety.


Dated: June 28, 2018                      Respectfully submitted,

                                       EPSTEIN DRANGEL LLP


                              BY:     <u>/s/ Mary Kate Brennan</u>
                                        Mary Kate Brennan (MB 5595)
                                        mbrennan@ipcounselors.com
                                        Spencer Wolgang (SW 2389)
                                        swolgang@ipcounselors.com
                                        Jason M. Drangel (JD 7204)
                                        jdrangel@ipcounselors.com
                                        Ashly E. Sands (AS 7715)
                                        asands@ipcounselors.com
                                        Brieanne Scully (BS 3711)
                                        bscully@ipcounselors.com
                                        60 East 42nd Street, Suite 2520
                                        New York, NY 10165
                                        Telephone:    (212) 292-5390
                                        Facsimile:    (212) 292-5391
                                        *Attorneys for Plaintiffs*
                                        *WowWee Group Limited,*
                                        *WowWee Canada, Inc. and*
                                        *WowWee USA, Inc.*