UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| WowWee Group Ltd., *et al.*, | |
| Plaintiffs, | |
| —v— | |
| Meirly, *et al.*, | |
| Defendants. | |

18-CV-706 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Plaintiffs' motion for the entry of default judgment. For the following reasons, the Court will GRANT Plaintiffs' motion as to its federal and one of its state claims, enter a permanent injunction, and award Plaintiffs statutory damages. The Court declines to enter a post-judgment asset freeze.

## I. Procedural Background

On January 26, 2018, Plaintiffs filed their Complaint along with an *ex parte* Application for (1) a temporary restraining order ("TRO"); (2) an Order to Show Cause ("OTSC") why a preliminary injunction should not issue; (3) an asset restraining order; (4) an order authorizing alternative service by electronic mail; and (5) an order authorizing expedited discovery against Defendants. *See* Dkt. Nos. 3, 8–23. Also on that date, the Court entered the TRO, set an OTSC Hearing, restrained Defendants' assets, and authorized electronic service and expedited discovery. Dkt. No. 11; Dkt. No. 65 ¶ 13. Relying on information obtained in third-party discovery, on February 6, 2018, Plaintiffs served copies of the TRO, Summons, Complaint, and all papers filed therewith on the Defendants. Dkt. No. 65 ¶ 15–18, Ex. C. On February 8, 2018, the Court held an OTSC Hearing. *See* Dkt. No. 65 ¶ 19. No Defendants appeared and the Court

1

entered a preliminary injunction order ("PI Order") against all Defendants mirroring the terms of the TRO. *See* Dkt. No. 65 ¶¶ 19–20. Plaintiffs served Defendants with the PI Order on February 9, 2018. Dkt. No. 65 ¶ 21; Dkt. No. 28. Under the terms of the TRO, all Defendants' deadlines to answer or otherwise respond were February 26, 2018. Dkt. No. 65 ¶ 22; *see* Dkt. No. 5. Some did not do so, and on May 14, 2018, Plaintiffs informed the Court that they intended to seek default judgment against nonappearing Defendants. Dkt. No. 46. This Court ordered Plaintiffs to so file by June 29, 2018. Dkt. Nos. 45, 47. On May 15, 2018, Plaintiffs requested Clerks' Certificates of Default, which they received on May 18, 2018. Dkt. Nos. 48–49; Dkt. No. 65, Ex. E. At the same time, litigation, an initial pretrial conference, and settlement discussions proceeded with respect to the appearing Defendants. *See* Dkt. Nos. 29–47, 50–62.

On June 28, 2018, Plaintiffs filed their motion for default judgment against the 45 Defendants they represent had not formally appeared or responded to the complaint as of that date ("the Defaulting Defendants").[1] Dkt. No. 63. In accordance with Rule 3.L of the Court's Individual Practices in Civil Cases, the motion for default judgment and supporting paperwork were also served on the Defaulting Defendants, and an affidavit of service filed. Dkt. No. 66.

On February 7, 2019, the Court ordered additional briefing regarding the Court's exercise of supplemental jurisdiction in this matter. Dkt. No. 77. On February 28, 2019, Plaintiffs filed that briefing and supporting documents. Dkt. Nos. 80–81.

---

[1] These defendants are identified on page iv of Plaintiffs' Memorandum of Law as: Meirly, Men's fashion shoes store, Miss Moon, Most time, New Fashion Product Toy, NewPage0, Pacento Offical Shoes Store, padarg, pencilcase, ppbau, rfhngmrtnjjted, Run-rabbit, sc888999, sexy women dress, Shenzhen Yuriy Trading Co., Ltd., shenzhenxinshidaidianzishangwudian, smartweicong, SONG789, summerdance, superllv, TIAN MA KE JI, tobest2016, Tsuneyo machinery accessories, TVG, Valuequalityandservice, Warm cocoa coffee, wenshuixiang, wh, windlyfly, Woo Chant, worldmakeup, wumanna, Xiaofeng001, xiaoxiangzi418, yangrongxxmm@163.com, yiwutengyue, YJ Stylish store, yjnfnhy, z_living, ZDSS, zhangshaoping85, zhangyazi, zhangyilin66, Zhi jia daily necessities and ZSJ. Dkt. No. 64, Br. at iv.

## II. Factual Background

Plaintiffs WowWee Group Limited, WowWee Canada, Inc., and WowWee USA, Inc. ("WowWee" or "Plaintiffs") are designers, developers, marketers, and distributors of robotic toys and consumer entertainment products, including interactive hand-held robotic toys known as Fingerlings Products. Compl. ¶¶ 8–9. They have obtained federal copyright and trademark registrations in and relating to the Fingerling Products. Compl. ¶¶ 12–16. In this action, they allege counterfeiting and infringement of WowWee's federally registered trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)–(b), Compl. ¶¶ 46–68; false designation of origin, passing off and unfair competition in violation the Lanham Act, 15 U.S.C. § 1125(a), Compl. ¶¶ 69–77; copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, Compl. ¶¶ 78–85; and related state and common law claims, Compl. ¶¶ 86–105.

Plaintiffs allege that the Defaulting Defendants are merchants on the Wish.com "marketplace and e-commerce platform," through which they "advertise, distribute, offer for sale, sell and ship their retail products . . . to consumers worldwide and specifically to consumers residing in the U.S., including New York." Compl. ¶ 24. Plaintiffs claim that the Defaulting Defendants have used their user accounts and merchant storefronts, without authorization, to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, and sell infringing or counterfeit products to "U.S. consumers, including those located in the state of New York." Compl. ¶¶ 32–33. The alleged infringing or counterfeit products constitute "products bearing or used in connection with the Fingerlings Marks and/or Fingerlings Works," and/or packaging or labels bearing or used in connection with the same, and/or products bearing or used in connection with confusingly or substantially similar artworks or products. Compl.

¶ 32.

      Plaintiffs represent that they retained a trademark infringement research services firm to investigate merchants selling infringing and counterfeit products on the Wish platform, and that the firm "specified a shipping address located in New York . . . and verified that each Defendant provides shipping to the New York address." Compl. ¶ 35. They allege that "each Defendant provides shipping and/or has actually shipped counterfeit products to the U.S., including to customers located in New York." Compl. ¶ 36. In their supplemental submission, Plaintiffs document each Defaulting Defendant's United States and New York sales, indicating that 34 Defaulting Defendants have made at least one New York sale and that it was possible to complete a checkout page for an order to a New York address from every Defaulting Defendant. Dkt. No. 81-2 at 2; Dkt. No. 81-1; *see* Dkt. No. 21 ¶¶ 8–10.

## III.    Jurisdiction

### A.    Subject Matter Jurisdiction

      The Court has federal subject matter jurisdiction over Plaintiffs' federal copyright and trademark claims and claims arising out of such claims under 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, and 28 U.S.C. § 1338(b), and supplemental jurisdiction over related state claims under 28 U.S.C. § 1367(a).

### B.    Personal Jurisdiction

      The Court also has personal jurisdiction over Defendants in this judicial district. The Court engages in a two-step analysis to determine whether it has personal jurisdiction over a defendant: it (1) applies the long-arm statute of the forum state and then (2) analyzes whether the exercise of that personal jurisdiction "comports with the Due Process Clause." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

### 1. The New York Long-Arm Statute Supports a Finding of Personal Jurisdiction[2]

Plaintiffs point to three different predicates for personal jurisdiction under the New York long-arm statute. Because the Court concludes that personal jurisdiction exists under N.Y. C.P.L.R. § 302(a)(1), the Court need not address their other theories.

Section 302(a)(1) permits the Court to exercise personal jurisdiction over a "non-domiciliary who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). The "jurisdictional net" cast by this subsection reaches those defendants who, under the totality of circumstances, "purposefully avail[ themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its law." *Mattel, Inc. v. Adventure Apparel*, No. 00-CV-4085 (RWS), 2001 WL 286728, *2 (S.D.N.Y. Mar. 22, 2001) (citation and internal brackets omitted).

A "highly interactive website" with "significant commercial elements" "may confer personal jurisdiction" under this subsection. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting in part *Vandermark v. Jotomo Corp.*, 839 N.Y.S.2d 931, 932–33 (4th Dept. 2007)). Accordingly, courts interpreting New York law have found personal jurisdiction over defendants who operated websites offering counterfeit or infringing items "for sale to New York customers; permit[ting] New York customers to purchase [such items], and facilitat[ing] [their] shipment . . . into New York." *Id.* at 168. A single sale may be sufficient provided that the defendant's activities were purposeful and there was a substantial relationship

---

[2] If any of the Defaulting Defendants were in fact domiciliaries of New York, the Court independently has personal jurisdiction over them under N.Y. C.P.L.R. § 301; in the absence of any domiciliary allegations, the Court assumes defendants are not domiciled in New York.

between the transaction and the claim asserted. *See, e.g.*, *Chloe*, 616 F.3d at 163–64; *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). Some courts have also concluded that operating an interactive website may be enough, standing alone, to support personal jurisdiction. *See, e.g.*, *Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [it] to personal jurisdiction here.").

Here, Plaintiffs stop short of alleging that each Defaulting Defendant made an actual sale in New York State, and rest instead on the fact that each Defaulting Defendant offers its products for sale to New York customers and provides shipping to New York shipping addresses. The requirements of Section 302(a)(1) are met for both groups of defendants. First, each of the thirty-four Defaulting Defendants who made sales into New York State purposefully availed themselves of the privileges of conducting activities in New York by shipped counterfeit items to New York addresses.

The Court also has personal jurisdiction over the Defaulting Defendants who have not been shown to have made sales into New York. As Plaintiffs detail, courts in this district— including the undersigned—routinely exercise personal jurisdiction over defendants in analogous cases based only on completed checkout pages. *See* Dkt. No. 80 at 5 n.5. Although many of these cases were default judgments that did not involve reasoned opinions, the Court follows their lead for two reasons.

First, Plaintiffs' submissions indicate that it is likely that the Defaulting Defendants made sales into the New York market that are not documented in Plaintiffs' papers. Their affidavits in support of their applications for a TRO and for default judgment assert that merchants like the Defaulting Defendants operate near-identical merchant pages and frequently conceal the scope

and interworking of their counterfeiting operations, suggesting that the merchants may not be distinct. Dkt. No. 23 ¶¶ 13–15. For example, as discussed at the Initial Pretrial Conference held on June 13, 2018, Plaintiffs learned after their appearance in this action that 30 of the non-defaulting defendants shared a common owner. Dkt. No. 64 ("Br.") at 6 n.5. Moreover, sellers on Wish likely utilize other e-commerce platforms in addition to Wish, which platforms they may also use to make sales of the same infringing products into New York State. Dkt. No. 65 ¶¶ 31–33. At the default judgment posture and without the benefit of discovery, Plaintiffs likely did not uncover all instances of sales into New York State. These limitations counsel against putting undue emphasis on proven sales in the default judgment context, especially when other factors favor the exercise of personal jurisdiction. Namely, in addition to the likely overlap between Defaulting Defendants, Defaulting Defendants purposefully listed products on a website that offers shipping to New York, and there is a substantial relationship between those offers for sale and the trademark infringement harms alleged to have been inflicted in New York.

Furthermore, the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers. In *Citigroup, Inc. v. City Holding Co.*, for example, the district court went so far as to "conclude[ ]" that the business's activity over the Internet, which consisted of posting information about products, taking applications, and providing email and live chat responses to customers, "confer[red] personal jurisdiction under CPLR § 302(a)(1),"—and remarked only that the other activities served to "bolster" its jurisdictional finding. 97 F. Supp. 2d 549, 555–56 (S.D.N.Y. 2000). Although the website at issue in *Citigroup* likely facilitated a greater range of activity with consumers than the website at issue here, the logic of *Citigroup*, *Chloe*, and other circuit case law is consistent with finding that Defaulting Defendants' behavior here was sufficient to constitute transacting

7

business for the purposes of Section 302(a)(1).

Some courts in this district have declined to assert jurisdiction in the absence of allegations that the websites at issue were "actually used to effect commercial transactions with customers in New York," *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (quotation omitted), such as targeted solicitation, contracts with New York agents, or documented sales to New York customers. *See, e.g.*, *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006); *Savage Universal Corp. v. Grazier Const., Inc.*, No. 4-CV-1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (Lynch, J). At least when, as here, Defaulting Defendants' alleged conduct and failure to appear serve to limit Plaintiffs' ability to show that such commercial transactions occurred, the Court finds such showing unnecessary.

### 2. Exercising Personal Jurisdiction Comports with the Due Process Clause

Due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quotation omitted). This standard is satisfied without further inquiry by state long-arm statutes, like Section 302, that permit the exercise of jurisdiction in a narrower range of circumstances than the Due Process Clause. *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, the Court finds its exercise of personal jurisdiction consistent with the Due Process Clause for all of the reasons explained above.

## IV. Legal Standard

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the

entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 54(c).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137. Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor. *Belizare*, 61 F. Supp. 3d at 344.

## V. Discussion

Turning to the present case, the Court first examines the threshold question of whether joinder is appropriate in this action. Concluding that it is, the Court next examines whether

Plaintiffs' claims meet the standard for default judgment and addresses appropriate remedies.

### A.    Joinder Remains Appropriate

"Parties may be joined when" there are common questions of law or fact and when "(1) the defendants are jointly and severally liable under the claims asserted by the plaintiff, or (2) the claim for relief by the plaintiff arises out of the same transaction, occurrence, or series of transactions or occurrences." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 243 (S.D.N.Y. 2012) (Nathan, J.) (citing Fed. R. Civ. P. 20(a)(2)). Under the Federal Rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

The Court finds these elements met in this action. Because of the similar course of conduct in which all Defaulting Defendant are alleged to have engaged, this case clearly presents common questions of law or fact. The closer question is whether the claims for relief arise out of the same series of transactions or occurrences notwithstanding the fact that they are asserted against dozens of different merchants on the Wish.com platform.

Plaintiffs assert two reasons for finding this standard met in this case. First, Plaintiffs infer a "logical relationship" between the Defaulting Defendants. There are significant similarities across the Defaulting Defendants' merchant storefronts, and Plaintiffs contend that many Defaulting Defendants likely share common ownership, even if that ownership is not readily identifiable based on the Wish.com platform. Br. at 5–8; *see also Bulgari, S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14-CV-4819 (RAG) (MMR), 2014 WL 3749132, at *1–5 (N.D. Ill. Jul. 18, 2014) (recommending granting preliminary injunction against similar host of alleged counterfeiters) *report and recommendation adopted*

2014 WL 3765854, at *2 (N.D. Ill. July 29, 2014). Second, Plaintiffs note that Defendants have failed to appear and raise any issue regarding joinder. As a consequence, there are no defenses raised in this action, let alone conflicting ones, that would require separate factual and legal analysis. As a final matter, Plaintiffs note the practical argument that China-based counterfeiters like Defaulting Defendants are in constant communication and could easily spread news of impending lawsuits to one another, frustrating an attempt to litigate against each seller individually. Br. at 6.

The Court finds these arguments sufficient to support its continued declining to sever this action as to each Defendant. Although there may be concerns regarding the appropriateness of joinder of many distinct defendants, those concerns are moderated when no conflicting defenses have been asserted and when Plaintiff has established a strong likelihood that many of the Defaulting Defendants have engaged in coordinated actions or share ownership.

## B. Default Judgment on Plaintiffs' Federal and One of its State Claims Is Warranted

In this action, Plaintiffs allege eight causes of action arising out of Defaulting Defendants' alleged marketing and sale of counterfeit Fingerlings Products.

### 1. Default Judgment on Plaintiffs' Counterfeiting, Infringement, and False Designation Claims Is Warranted

The first three counts of Plaintiffs' complaint allege trademark counterfeiting, trademark infringement, and false designation claims in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (b) and § 1125(a).

The Lanham Act imposes liability on any person who in connection with the sale, offering for sale, or distribution of a good either uses a counterfeit of a registered mark or counterfeits such mark in advertising or packaging materials when such use or counterfeiting is likely to cause confusion. 15 U.S.C. § 1114(1)(a)–(b). It also bars as false designation the use in

11

commerce of any word, term, name, symbol, device, or combination thereof, which is likely to cause confusion as to the origin, sponsorship, or approval of a person's goods with those of another person or which misrepresents the nature, characteristics, qualities, or geographic origin of another person's goods. 15 U.S.C. § 1125(a)(1)(A)–(B).

Despite differences in the statutory language, the same legal test applies to each claim asserted here. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). Courts ask whether the allegedly infringed mark "is entitled to protection" and, if so, "whether use of the allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of the products to which it is attached." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 168 (2d Cir. 2016) (quotation omitted). As to the first element, "[a] certificate of registration with the Patent and Trademark Office is prima facie evidence that the mark is registered and valid." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). As to the second, the standard for consumer confusion is easily satisfied in the case of counterfeits "because counterfeits, by their very nature, cause confusion." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quotation omitted).

Both elements are met in this case. Plaintiffs allege that they possess certificates of trademark registration for "WOW WEE" and "FINGERLINGS" for a variety of goods, and attach certificates of those registrations to their complaint. Compl. ¶ 15; Dkt. No. 8-3. And, taking the allegations in Plaintiffs' complaint as true, Defaulting Defendants' products are each virtually identical to one of Plaintiffs' products and incorporate copies or colorable imitations of marks on their product packaging, with only minor variations that no ordinary consumer would recognize. *E.g.*, Compl. ¶¶ 34, 37–39, 51. These allegations are sufficient to support the conclusion that the marks deployed by Defaulting Defendant are counterfeits: the average

purchaser would find the allegedly counterfeit mark to be substantially similar to the registered mark as it appears on the actual merchandise. *See, e.g.*, *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 531–32 (2d Cir. 1983); *Coach*, 908 F. Supp. at 434. On this basis, the Court finds that default judgment on Plaintiffs' first three causes of action are is warranted.

### 2. Default Judgment on Plaintiffs' Copyright Infringement Claim Is Warranted

To prevail on a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) infringement of that copyright by the defendant. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360 (1991). There is a statutory presumption that registered copyrights are valid. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001). To establish infringement, the copyright owner must demonstrate (1) that the defendant has actually copied the owner's work and (2) that the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of the owner's work. *Id.* at 110. Actual copying may be shown by indirect evidence; "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995). Substantial similarity, in turn, hinges on "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999).

Both elements are met in this case. Plaintiffs allege that they are the owner of U.S. Copyright Registration numbers covering the Fingerlings Monkey, Unicorn, Sloth, and accompanying packaging, and attach their registration certificates to their complaint. Compl. ¶ 13; Dkt. No. 8-2. These allegations suffice to establish the statutory presumption of validity, and are not contradicted by any other allegations or arguments before the Court. For the same

reasons that the allegations in Plaintiffs' complaint establish that the products at issue are counterfeits, Plaintiffs have carried their burden of showing actual copying and substantial similarity. Plaintiffs' allegations establish that both the products and the packaging are so strikingly similar as to prove that Defaulting Defendants had access to their products and created works that were substantially similar to Plaintiffs' works. *See* Compl. ¶¶ 37–39; Dkt. No. 8-4. As above, the average lay observer would recognize Defaulting Defendants' alleged copies as being appropriated from Plaintiffs' work. *See* Dkt. No. 8-4.

### 3. Default Judgment on Plaintiffs' New York Business Law Claims Is Not Warranted

Plaintiffs also allege violations of the New York General Business Law's prohibition on deceptive acts and practices and false advertising based upon allegations that Defaulting Defendants' sales and advertising of counterfeit products deceives consumers, the public, and the trade with respect to the source or origin of their products. Compl. ¶¶ 86–95; N.Y. Gen. Bus. Law §§ 349–50. But "[i]t is well settled . . . that infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above the ordinary trademark infringement or dilution." *Luv N' Care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010) (Chin, J.); *see also Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002) ("[T]he majority [of courts] have held that trademark cases are outside the scope of this general consumer protection statute."). Accordingly, the allegations in Plaintiffs complaint fail to state a claim under either of these sections.

### 4. Default Judgment on Plaintiffs' Common Law Claims is Warranted in Part

Finally, Plaintiffs allege unfair competition and unjust enrichment in violation of New York common law.

To state a claim for unfair competition under New York common law, a plaintiff must allege (1) bad faith (2) misappropriation of the labors and expenditures of another that is (3) likely to cause confusion. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995). Alleging a likelihood of confusion is sufficient to state a claim for injunctive relief, while to state a claim for damages, Plaintiff must allege actual confusion. *Id.* A plaintiff has carried this burden when it states a Lanham Act claim coupled with a showing of bad faith or intent, *see Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016); and "[u]se of a counterfeit mark creates a presumption of bad faith." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599 (S.D.N.Y. 2010) (Sand, J.). Because Plaintiff has made out a Lanham Act claim for use of a counterfeit trademark, these elements are easily met in this action.

Finally, the elements of unjust enrichment under New York law are "(1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch, Ltd. v. Phoenix Pictures, Inc.*, 373 F.2d 296, 306 (2d Cir. 2004). But unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Accordingly, courts in this circuit frequently dismiss unjust enrichment claims brought in Lanham Act cases. *See, e.g., Boost Worldwide, Inc. v. Talk Til U Drop Wireless, Inc.*, No. 14-CV-86 (MAD), 2014 WL 5026777, at *2 n.2 (N.D.N.Y. Oct. 8, 2014); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014). The same

result is warranted here.

## VI. Remedies

Having concluded that Plaintiffs have established liability as to their Lanham Act, copyright, and unfair competition claims, the Court turns next to remedies. Plaintiff seeks entry of a permanent injunction, heightened statutory damages, and the post-judgment continuance of the pre-judgment asset restraint imposed on Defaulting Defendants by the temporary restraining order and preliminary injunction previously entered in this matter.

### A. A Permanent Injunction Is Warranted

The Court has authority to grant injunctive relief to prevent further violations of a plaintiff's trademarks and copyrights. 15 U.S.C. § 1116. When, as here, a plaintiff has succeeded on the merits, a permanent injunction is appropriate if the plaintiff has demonstrated (1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved. *eBay Inc. v. Merc Exchange, LLC*, 547 U.S. 388, 391 (2006); *Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010) (extending the *eBay* standard to copyright actions); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011) (extending the *eBay/Salinger* standard to trademark infringement actions), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order).

All of these factors favor issuing the requested permanent injunction. "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable.'" *U.S. Polo Ass'n*, 800 F. Supp. 2d at 540 (quotation and

internal quotation marks omitted). Plaintiffs' allegations of loss of goodwill, which are admitted by virtue of Defendants' default, suffice to make this showing. Further, Defaulting Defendants' past conduct raises a likelihood that they will continue to infringe Plaintiffs' intellectual property rights if the preliminary injunction is lifted. The risk of this continued activity establishes the second element: a plaintiff has no adequate remedy at law if, absent an injunction, "the defendant is likely to continue infringing" its intellectual property rights. *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008)

The balance of hardships similarly favors issuing the requested injunction, because "it is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (quotation omitted). Finally, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

**B.      Statutory Damages Are Approved**

When the Court enters a default judgment, while it accepts as true all of the factual allegations in the complaint, "the amount of the damages are not deemed true." *Credit Lyonnais Securities (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir. 1999). Instead the Court must "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Id.* Here, Plaintiff submits tiered requests for statutory damages based upon the currently known number of sales of counterfeit products made by the Defaulting Defendants. Br. at 18; *see also* Dkt. No. 81-2. Across tiers, Plaintiffs request heightened statutory damages under the Lanham Act[3] based

---

[3] Plaintiffs elect damages under the Lanham Act "without waiving their claims under the Copyright Act," Br. at 15, and do not address their state law claims. Although some courts have concluded that plaintiffs "are not entitled to duplicative recoveries for the same intellectual property theft under multiple theories of liability," *TU v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLT), 2009 WL 2905780, at *4 (E.D.N.Y. 2009); *see also InduCraft, Inc. v.*

on their allegations that Defaulting Defendants acted willfully. The Court approves Plaintiffs' damages requests with the modifications described below.

The Lanham Act permits plaintiffs to elect statutory damages. 15 U.S.C. § 1117(c). If the Court concludes that the use of the counterfeit mark was willful, Plaintiffs may elect an award not less than $1,000 and not more than $2 million per counterfeit mark per type of good sold or offered for sale. *Id.* "Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012) (summary order) (quotation and internal quotation marks omitted). Although the Lanham Act does not itself provide guidelines, courts in this district "have imported from copyright law a multifactor test" that looks to (1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or the innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof of profits and losses; and (7) the need to deter the defendant from future misconduct. *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425–26 & n.4 (S.D.N.Y. 2018) (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (articulating this standard in the Copyright Act context).

As an initial matter, Plaintiffs are entitled to elect damages from the statutory range applicable to willful infringement. Defaulting Defendants presumptively acted willfully because infringement is deemed willful "by virtue of [a] default." *Tiffany (NJ) v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Even in the absence of a default, courts in this district have

---

*Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (articulating this theory at a higher level of generality), the Court need not address this question, as Plaintiffs elect statutory damages under the Lanham Act only.

concluded that use of marks that are "virtually identical" to the registered marks renders "inescapable" the conclusion that the defendant's infringement and counterfeiting was intentional. *Coach, Inc. v. Melendez*, No. 10-CV-6178 (BSJ)(HBP), 2011 WL 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), *report and recommendation adopted*, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995).

Turning next to the *Fitzgerald* factors, Defaulting Defendants' failure to appear in this action prevents the Court from ascertaining their profits or the full extent of Plaintiffs' losses, although as a general matter "[c]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range." *Spin Master*, 325 F. Supp. 3d at 426. Of those factors the Court can evaluate, Defendants' noncooperativeness (factor 6), the value of the mark (factor 3), the need to deter other possible infringers (factor 4), and the Defaulting Defendants' willfulness (factor 5) favor a heightened award. On the other side of the balance, because the Court has approved a permanent injunction in this action, specific deterrence (factor 7) does not necessarily militate for a higher award. In analogous cases, armed with "little information as to the scope or consequences of a defendant's infringement," *Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, 06-CV-7827 (HB), 2008 WL 4449533 at *5–6 (S.D.N.Y. Oct.2, 2008), courts in this district have issued awards far below the statutory maximum, ranging in amounts from $25,000 to $50,000 for what are generally "small-scale counterfeiting operations" to up to $1 million when "there was reason to believe that the defendant's sales were substantial"—up to and including "millions of infringing goods," *Tiffany (NJ) LLC v. Dong*, No. 11-CV-2183 (GBD)(FM), 2013 WL 4046380, at *6 (S.D.N.Y. Aug. 9, 2013) (citing examples); *see also Burberry Ltd. v. Euro Moda, Inc.*, No. 08-CV-5781

(CM)(AJP), 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) (similar).

Here, Plaintiffs propose a recovery structure that resembles the landscape of this case law, with statutory damages awards tiered roughly by the number of documented sales made by each Defaulting Defendant.  Although Plaintiffs do not cite specific authority for this procedure in other many-defendant cases, the Court approves this tiered structure on the grounds that the tiers likely correspond to the otherwise unaccounted for factors of profit and expense.  However, the Court makes the following modifications to bring Plaintiffs' request in line with comparable cases: Plaintiffs are entitled to awards of $50,000 from each Defaulting Defendant in the first tier; $75,000 from each Defaulting Defendant in the second tier; $125,000 from each Defaulting Defendant in the third tier, $250,000 from each Defaulting Defendant in the fourth tier, and $500,000 from each Defaulting Defendant in the final tier.  Post-judgment interest shall be awarded on these amounts pursuant to 28 U.S.C. § 1961.

### C.     A Post-Judgment Asset Freeze Is Not Appropriate

Finally, Plaintiffs request that the Court continue the prejudgment asset restraint previously imposed on Defaulting Defendants in the TRO and PI orders.  The Court declines to approve this request.

This Court has previously observed that "courts in this district have focused on freezing assets to preserve the equitable remedies of a return of lost profits and an accounting, not statutory damages." *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012), *supplemented*, 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012).  To conclude otherwise might place those courts in tension with the Supreme Court's holding in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.* that district courts have "no authority to issue a preliminary injunction preventing [a party] from disposing of [its]

assets pending adjudication of [a] contract claim for money damages." 527 U.S. 308, 333 (1999); *see also Klipsch*, 2012 WL 5265727, at *6 ("statutory damages under the Lanham Act are a remedy at law, not one at equity") (collecting cases). The Second Circuit has explicitly approved entry of preliminary injunctions, like the injunction operative in this action, when the plaintiff is pursuing a claim for final equitable relief. *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 131 (2d Cir. 2014).

Because Plaintiffs have elected statutory damages, however, there is no basis to continue to maintain an asset freeze designed to facilitate an equitable recovery. As another court in this district explained in a similar posture, the Second Circuit in *Gucci* explicitly cabined its logic to a plaintiff's request for an accounting of profits in the prejudgment context. *Tiffany (NJ) LLC v. QI Andrew*, No. 10-CV-9471 (KPF), 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) (citing *Gucci*, 768 F.3d at 131, and similar cases). Accordingly, that court declined to approve a practice of imposing post-judgment asset freezes. *Id.* The court explained that the ordinary recourse upon securing a money judgment is to look for the remedies available under Federal Rule of Civil Procedure 69 and state law; it was not appropriate to "adopt a reading of a post-judgment asset freeze remedy under Rule 65 that would seemingly subsume the remedies provided by Rule 69 and state law." *Id.* n.9.

The nonbinding authority cited by Plaintiffs does not overcome this logic. Although at least one district court has found post-judgment asset restraint appropriate, *see Tiffany (NJ) LLC v. Forbse*, No. 11-CV-4976 (NRB), 2015 WL 5638060, at *3–4 (S.D.N.Y. Sept. 22, 2015), neither that court nor Plaintiffs explain how the Court could exercise such authority consistent with the logic of *Grupo Mexicano* and the post-judgment enforcement scheme embodied in the Federal Rules. To the extent Plaintiffs are concerned about the risk that Defaulting Defendants

will dispose of, transfer, or hide their assets, it should turn to the remedies ordinarily applicable to enforcement of judgments at law under Rule 69 and N.Y. C.P.L.R. § 5222.

## VII. Conclusion

For the foregoing reasons, Plaintiffs' motion for entry of default judgment will be GRANTED as to Defaulting Defendants' liability for (1) trademark counterfeiting under the Lanham Act; (2) trademark infringement under the Lanham Act; (3) false designation of origin, passing off, and unfair competition under the Lanham Act; (4) copyright infringement; and (5) common law unfair competition. Plaintiffs' requests for a permanent injunction and statutory damages are also approved. The Court declines to enter a post-judgment asset freeze. The Court will enter a revised version of Plaintiffs' proposed judgment by separate order.

This resolves Docket Number 63.

Dated: March 27, 2019
     New York, New York

ALISON J. NATHAN
United States District Judge